## SUBSCRIPTION AGREEMENT

### I. SUBSCRIPTION

The undersigned hereby irrevocably subscribes, offers and agrees to purchase 3,125 shares of a new Illinois Business Corporation named Echelon Group, Inc. (the "Company") common stock, no par value (the "Shares") at a purchase price of $8 per share. The purchase price for the Shares shall be paid in cash or investment grade securities no later than _____, 2005.

### II. OFFERING

A. The Company expects to raise via subscriptions a total of between $5,000,000 and $20,000,000 representing 500,000 to 2,000,000 shares of common stock, no par value, at a purchase price of $10 per share. The purpose of the offering and the formation of the Company are to fund the surplus of a new property and casualty insurance company, Echelon Property & Casualty Insurance Company.

B. No more than 2.5 % of the total share price shall be used for commission, promotion, organization and other expenses.

C. The funds and securities deposited in accordance with this Subscription Agreement shall be deposited in an escrow account at North Community Bank pending transfer of the funds to the surplus of Echelon Property & Casualty Insurance Company.

D. Upon affirmative vote to do so by subscribers representing 50% or more of the amount subscribed, the total cash or securities received in payment for the Shares, less expenses directly connected with the formation and organization of the Company, will be returned to the subscribers who have made such payment in the event the organization of the Company is not completed.

E. Subscriptions to Shares shall be irrevocable unless Subscribers representing 50% or more of the amount subscribed shall consent to the revocation.

### III. REPRESENTATIONS AND WARRANTIES

The undersigned understands that the Shares have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or any applicable state securities laws and that there are no plans or intention to do so under the Securities Act or any such laws; the undersigned understands that

EXHIBIT C-2

the Shares are being offered and sold in reliance upon exemptions from registration under such laws; and the undersigned makes the following agreements, representations, declarations, acknowledgements, and warranties, with the intent that the same may be relied upon by the Company in determining the suitability of the undersigned as a purchaser of the Shares:

   A.  The undersigned agrees that he or she will not dispose of the Shares, in whole or part, unless and until the Company shall have consented thereto (which consent may be withheld in the absolute discretion of the Company).

   B.  The undersigned expressly represents, warrants, and agrees that:

      (1) Either individually or together with the undersigned's representative, the undersigned has knowledge and experience in financial and business matters so that the undersigned is capable of evaluating the merits and risks of an investment in the Shares;

      (2) The undersigned's financial condition is such that the undersigned has no need for liquidity with respect to the undersigned's investment in the Shares for an indefinite period of time and no need to dispose of any portion of the Shares to satisfy any existing or contemplated undertaking or indebtedness or for any other purpose;

      (3) The undersigned is able to bear the economic risk of the undersigned's investment in the Shares for an indefinite period of time, including the risk of losing all of such investment;

      (4) The undersigned is acquiring the Shares for investment, for the undersigned's own account and with no view towards the resale or further distribution thereof in whole or in part; and

      (5) The undersigned has received such information from the Company as the undersigned deemed necessary, including but not limited to the form of the Shares, and has made such investigation as the undersigned has deemed appropriate as an experienced investor. The Company has made available to the undersigned any information or sources of information available to the Company which the undersigned has requested. In making a decision to purchase the Shares, the undersigned has not relied upon any oral representations of the Company or its management or any of its shareholders nor upon any writings except as have been delivered to the

undersigned by the Company in connection herewith.

(6) The undersigned is a bona fide permanent resident of the state noted below in the undersigned's address and that the offering of the Shares was made to the undersigned in Chicago, Illinois.

(7) The undersigned is an "accredited investor" as defined in Regulation D promulgated under the Securities Act of 1933, as amended, by virtue of being a (mark item that applies to you):

\_\_\_\_\_ bank, insurance company, investment company or a private business development company;

\_\_\_\_\_ corporation, partnership, trust, pension plan or charitable organization with assets in excess of $5,000,000;

\_\_\_\_\_ director or executive officer of the Company;

\_\_\_\_\_ natural person who currently has an individual net worth, or joint net worth with that person's spouse, in excess of $1,000,000; or

\_\_\_\_\_ natural person who had an individual income in excess of $200,000, or in excess of $300,000 together with that person's spouse, in each of the two most recent years and who reasonably expects an income in excess of that amount in the current year.

C. The undersigned expressly acknowledges and understands that:

(1) An investment in the Shares involves certain risk factors, including but not limited to the risk of losing the entire investment in the Shares.

(2) The undersigned has the economic bargaining power in order to obtain full access to all information and documents concerning the Company and its proposed business required to make an informed investment decision.

(3) No federal or state agency has passed upon the adequacy or accuracy of the information set forth in any of the documentation provided or made any finding or determination as to the fairness or appropriateness or endorsement of the Shares as an investment; and

(4) There are substantial restrictions on the

transferability of the Shares; there will be no public market for the Shares and, accordingly, it may not be possible for the undersigned to liquidate the undersigned's investment in the Shares.

## IV. INDEMNIFICATION

The undersigned agrees to indemnify and hold harmless the Company and each of the officers and directors of the Company and the affiliates and agents of each of them, and hold them harmless from and against any and all loss, damage, liability, or expense, including reasonable attorneys' fees, which they or any of them may sustain or incur by reason of, or in connection with, any material misrepresentation or breach of warranty or agreement by the undersigned under this Subscription Agreement or in connection with the sale or distribution by the undersigned of the Shares purchased by the undersigned pursuant hereto in violation of the Securities Act or of any applicable state securities law.

## V. MISCELLANEOUS

This Subscription Agreement and the representations and warranties contained herein shall be binding upon the heirs, executors, administrators, and other successors of the undersigned.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement in Chicago, Illinois effective this _____ day of _____, 2004.

_____
Signature

HERB ELDEAN
Print name

ONE ELDEAN DRIVE

MACATAWA, MI  49434
Address

Social Security # 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

Telephone # 616-335-5843

Email Address  HERB @ ELDEAN.COM

4